IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN S. STAFFORD, III, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-6504 |
| CARS OF YESTERDAY, INC. a Florida | ) | |
| Corporation; and MARVIN FRIEDMAN, an | ) | Judge Robert W. Gettleman |
| individual | ) | Magistrate Judge Morton Denlow |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff John S. Stafford, III, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, moves this Court to review the order entered by Magistrate Judge Morton Denlow on May 28, 2008 (the "Order").

1.     On May 28, 2008, Judge Denlow denied Plaintiff discovery requesting that Defendants disclose other fraud claims made against them in connection with their sale of classic "cars from yesterday" and to produce documents for such claims (A copy of the May 28, 2008 transcript is attached as Exhibit A). Defendants objected to the requests based only on "relevance." Apparently, Defendants have a significant history of such claims (see discussion below) so it is no wonder they opposed the requests. However, the requests are reasonably calculated to lead to the discovery of admissible evidence and specifically go to questions of both liability and punitive damages. Judge Denlow denied the requests because, in his view, other, possibly unadjudicated claims would not be relevant to Plaintiff's claim based on his transaction with Defendants. However, such "pattern and practice" evidence has been repeatedly held to be relevant to claims for tortious conduct as well as punitive damages. For example, in

Albelo v. Gateway Chevrolet, -- F. Supp. 2d --, 2003 WL 732324 (N.D. Ill. Feb. 28, 2003), Magistrate Judge Mason, in granting a similar motion to compel, found that discovery of prior formal complaints of forgery in connection with car sales was potentially relevant to the issue of the likelihood that the defendant auto dealership forged a document in the underlying case. Similarly, in Mathias v. Accor Economy Lodging, Inc., -- F.Supp.2d --, 2002 WL 1611582, *1 (N.D. Ill. July 22, 2002) (aff'd on appeal 347 F.3d 672 (7th Cir. 2003)(J. Posner)), this Court held that under Rule 404(b) of the Federal Rules of Evidence, the defendant motel's disregard for complaints about bedbugs in rooms over the course of two years was relevant to plaintiffs' claim for punitive damages arising out of bedbug bites they incurred while staying at the motel. Federal Rule 404(b) provides: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake...*" (emphasis added). Accordingly, this Court should rescind Magistrate Denlow's May 28, 2008 order and enter an order compelling Defendants to respond to the discovery requests at issue.

2. Plaintiff filed the instant complaint for fraud, under both the Illinois Consumer Fraud Act and the common-law (the "Complaint"), arising out of Plaintiff's purchase of a 1957 Cadillac Eldorado Brougham from Defendant Cars of Yesterday, Inc. ("COY"), a Florida used car dealer, trading in classic "cars from yesterday." The Complaint also names Marvin Friedman, who represented himself as the owner of COY (although in his answer he admits he is not the owner). The Complaint seeks compensatory damages of $130,000 and punitive damages. (A copy of Plaintiff's Complaint is attached as Exhibit B.) Specifically, Plaintiff alleges that Friedman and COY made numerous false misrepresentations about the vehicle, including that it

was in "showroom condition," "rust free" and was otherwise completely restored at great expense. Plaintiff further alleges that defendants have "a pattern of making similar false statements and representations" to induce consumers to purchase vehicles. (Compl. Count II, par. 28).

3.    In Plaintiff's first set of interrogatories to Defendants, Plaintiff requested that Defendants "identify all other lawsuits, charges, claims, complaints, and/or oral or written complaints [its has] received from customers relating to eBay auctions and/or any alleged fraud or misrepresentations." (Interrogatory No. 24). Document request no. 26 sought "all documents relating to other lawsuits, charges, claims, complaints, and/or oral or written complaints [Defendants have] received from customers relating to eBay auctions and/or any alleged fraud or misrepresentations."

4.    In their responses to Plaintiff's discovery requests, Defendants objected to interrogatory no. 24 and document request no. 26 only on the basis of "relevance." Plaintiff's motion to compel responses to these requests was heard on May 28, 2007. (A copy of Plaintiff's Motion to Compel is attached as Exhibit C – no response to the motion was filed.) The motion argued, among other things, that the requests sought information and documents within the scope of discovery under Rule 26(b)(1) and were directly relevant to Plaintiffs' claims for fraud and punitive damages.

5.    Magistrate Denlow denied the motion in part because, in his view, "I don't see how [this information is] possibly relevant" or "probative" and because it would be a "miscarriage of justice ... in a case involving [only] $130,000" to allow the discovery requests. (See Exhibit A, March 28, 2008 transcript, pages 3, 7). Judge Denlow also denied the motion

based on his concerns that the information sought might involve unadjudicated claims and because this case is not a "class action." Id. pg 3.

6.    The Magistrate's ruling is erroneous on multiple grounds.    First, information regarding Defendants history of conduct similar to that alleged by Plaintiff is directly relevant to Plaintiff's complaint.   The broad scope of discovery means that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... [and is of] discoverable matter." See Acevado v. Ace Coffee Bar, Inc., -- F.R.D. --, 2008 WL 538915 (N.D. Ill. Feb. 25, 2008); Fed. R. Civ. P. 26(b)(1).   Under Rule 26, parties are entitled to discovery regarding information relating to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Id. (internal citations omitted).   As shown further below, the requested information is relevant to both the issue of punitive damages and liability.

7.    The information is properly sought and is reasonably aimed at supporting Plaintiff's punitive damages claim.   In reviewing the constitutionality of punitive damage awards, the United States Supreme Court has held that courts should consider three "guideposts," the first, and most important of which, is "the degree of reprehensibility of the defendant's misconduct." Gehrett v. Chrysler Corp., -- Ill. App. 2d. --, 882 N.E.2d 1102, 1119 (2nd Dist. 2008); citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996).   Among the factors courts consider in determining the reprehensibility of a defendant's conduct is whether *"the conduct involved repeated actions or was an isolated incident."* Id. (emphasis added).   A court may make a finding of reprehensibility based upon only one factor.   Id. at 1120, citing International Union of Operating Engineers, Local 150, v. Lowe Excavating Co., 225 Ill. 2d 456, 470, 870 N.E.2d 303, 313 (2006).

8.      Accordingly, Illinois courts have routinely held that they are "permitted to consider a defendant's conduct towards the plaintiff in question, *as well as similar conduct extending beyond the plaintiff's case*, when determining whether a defendant can be labeled a recidivist for reprehensibility purposes." International Union, at 480, 870 N.E.2d at 318-319 (emphasis added). See also Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 674, 677 (7th Cir. 2003) (J. Posner) (defendant motel's disregard for other guests subjected to its known infestation by bed bugs was relevant to awarding punitive damages in plaintiffs' claim for this same misconduct). Moreover, the United States Supreme Court has found that, "evidence of other acts need not be identical to have relevance in the calculation of punitive damages," and that a plaintiff must only show that those other acts involve conduct "similar to that which harmed them." State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). Accordingly, whether or not the other claims are "unadjudicated," is not, as Judge Denlow found, an absolute bar to such discovery. Nor, as Judge Denlow stated, is such discovery only available in a class action.

9.      Evidence of a history of a defendant's similarly willful and wanton conduct is directly relevant to the issue of punitive damages. In BMW v. Gore, *supra.*, the Supreme Court considered whether BMW engaged in repeated misconduct when it routinely sold cars in the state of Alabama, and elsewhere, which had been slightly damaged and repaired and sold as "new" without disclosing the damages and repairs to the customer. The jury, in the underlying court, awarded $4,000 compensatory and $4,000,000 in punitive damages based on the recidivist nature of defendant's conduct. While the Supreme Court reversed the award as excessive, it recognized that evidence of nondisclosure of such repairs, forming part of a nationwide pattern of tortious conduct, was relevant to the question of punitive damages. Id. at 573, 574.

10.     Similarly, here, evidence of other complaints that are similar in nature, some of which Plaintiff has already discovered through its own investigation, is directly relevant to the issues of reprehensibility and the recidivist nature of Defendants' conduct.  This weighs directly on Plaintiff's ability to prove punitive damages in this case.  So long as the evidence of other misconduct is similar to the conduct complained of in Plaintiff's Complaint, the evidence is, contrary to Judge Denlow's ruling, potentially relevant to Plaintiff's transaction with defendants.

11.     In addition, the size of the claim is not a basis on which to measure the reasonableness of a discovery request.  Judge Denlow stated that it would be a "miscarriage of justice" to allow the discovery requested in a case involving only $130,000.  See Exhibit A, pg. 7.  There is no legal standard providing that discovery is limited based on the size of the claim, which in this case is $130,000 in actual damages.  Significantly, compare Mathias, supra, in which the Seventh Circuit affirmed a punitive damages award of $186,000, stemming from an award of *compensatory damages of only $5,000,* based on the hotel chain's recidivist conduct in disregarding the known risk of bedbug infestation in its 191-room hotel.  Id., 347 F.3d at 678. See also BMW, supra., (Supreme Court recognized that evidence of nondisclosure of repairs, forming part of a nationwide pattern of tortious conduct, was relevant to the question of punitive damages in case involving *only $4,000 in actual damages*).  In addition, in TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993), the Supreme Court found that a punitive damage award of $10 million against an oil and gas developer was not so "grossly excessive" as to violate due process, even though the *actual damages award was only $19,000.* The Court factored in, among other things, the developer's bad faith and net worth, and the fact that the defendant's scheme was part of larger pattern of fraud, trickery, and deceit.

6

12.     Further, there is no rule, as Judge Denlow suggested, that such information is only relevant in a "class action." For the purposes of non-class litigation, such discovery is still valid to establish a similar pattern of recidivist conduct on defendants' part, even though the court will not "adjudicate" those other claims. See Kapelanski v. Johnson, 390 F.3d 526, 534 (7th Cir. 2004)(Jury's punitive damage award of $331,250 was not excessive, under federal and state law, in investors' lawsuit alleging common law fraud and breach of fiduciary duty under Illinois law, since defendant businessman willfully defrauded multiple investors of large sums of money, and award represented permissible ratio of 3.3 to 1). Notably, Plaintiff is not seeking to adjudicate other claims, but rather seeks to present this evidence of Defendants' acts of similar misconduct for the valid and limited purpose of supporting of Plaintiff's claim for punitive damages.

13.     Evidence of Defendants' pattern and practice of the fraudulent conduct alleged by Plaintiff is also relevant and probative on the issues of both liability and punitive damages under Federal Rule of Evidence 404(b), "Other Crimes, Wrongs, or Acts." This rule provides for the use of such evidence to prove, among other things, "motive," or "intent," which is an element of common law fraud. Fed. R. Evid. 404(b). In Albelo v. Gateway Chevrolet, *supra.*, this Court found that discovery of prior formal complaints of forgery, either through court or administrative proceedings or complaints to agencies such as the Better Business Bureau, was potentially relevant to the issue of the likelihood that the defendant auto dealership forged a document in the underlying case, and was therefore discoverable. Similarly, in Mathias v. Accor Economy Lodging, Inc., *supra.*, this Court, in the motel patrons' action to recover damages for severe emotional distress arising from insect infestation in bedding and resulting bites and papulae formation on their bodies, found that evidence of insects in motel rooms other than the room where the incident occurred was admissible because the evidence of continuous infestation with

insects in multiple rooms on multiple floors in the two years prior to the patrons' arrival made the hotel's willful disregard of the risk of injury more reprehensible. The Court held that under Rule 404(b) of the Federal Rules of Evidence, the defendant's disregard for complaints about bedbugs in rooms over the course of two years was relevant to the plaintiffs' claim for punitive damages. [1] Accordingly, evidence of other similar complaints and Friedman's pattern of false representations is probative of Friedman's intent in making the misrepresentations alleged in this case.

14.    Indeed, Friedman and COY have six pending cases of record against them in Broward County, Florida, and approximately 20 closed cases. A copy of the Broward County docket is attached as Exhibit D. In addition, upon information and belief, multiple complaints have been filed against Friedman and COY with the Florida Attorney General's office. Part of Freidman and COY's unfair and deceptive practices include threats to sue customers after the misrepresented car is delivered and the customer complains. After a car is sold by Friedman and COY, Friedman not only refuses to take the vehicle back, but actually threatens them with legal action. Examples of such threats are contained in an email from Friedman to Plaintiff in this

---

[1]    See also Saunders v. City of Chicago, 320 F. Supp. 2d 735, 739 (N.D. Ill. 2004)(Prior instances of alleged misconduct by police officers who were defendants in arrestee's suit alleging use of excessive force were admissible consistent with evidence rule); Campus Sweater and Sportwear Co. v. M.B. Kahn Constr. Co., 515 F. Supp. 64 (D.S.C. 1979), aff'd without published opinion, 644 F.2d 877 (4th Cir. 1981)(consumer sought to prove manufacturer of a roof made intentional misrepresentations about the product; court ruled, under rule 404(b), that complaints by persons who encountered similar problems with the use of the product on roofs throughout the country were admissible to prove intent); Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc., 524 F.2d 162, 167 (10th Cir. 1975)(similar past conduct in tampering with odometer to falsify mileage on second hand cars admissible to prove intent); and Howard Opera House Assoc. v. Urban Outfitters, Inc., 322 F.3d 125, 128-129 (2nd Cir. 2003)(Admission of prior bad acts evidence of previous excessive noise problems in other stores operated by retail tenant was warranted, in action by landlord and other tenant against retail tenant for breach of implied covenant of good faith and fair dealing, in connection with retail tenant's playing of loud music; evidence was probative of tenant's intent, plan, motive, and pattern of behavior following execution of lease agreement, and was relevant to prove that tenant intentionally breached implied covenant of good faith and fair dealing, as it tended to show that retail tenant knew that its music had disruptive effect and continued to play it at excessive levels despite that knowledge).

case in which Freidman states that his lawyer "has never lost a case for us.  Like all good attorney's ... he is very expensive.  Once we win, we will sue you for all his legal fees and expenses," and a letter from Freidman and COY's lawyer warning another defrauded customer: "If you persist in your continuous false and slanderous activities my clients will consider all legal remedies available to have such activities immediately ceases (sic) and money damages awarded."  Copies of the email and letter are attached as <u>Exhibit E</u>.

15.    Indeed, Plaintiff has already identified consumers in New Jersey, Kentucky, Maryland, Idaho, and California who were defrauded in similar fashion, i.e. misrepresentations by defendant Friedman regarding the conditions of vehicles, including that they were in "showroom condition," "rust free," and were otherwise restored to "new" condition.  Thus, Defendants should have information responsive to the discovery requests.  A brief description and excerpts of the above-referenced complaints, found on various internet sites, including "Rip Off Report" and "Consumer Affairs" are as follows:

- "The car was extremely misadvertised.  Marv is a huge liar (sic)!" ~Kent Lind, Meridian, Idaho

- "Beware- No.1 Con Artist; car totally misrepresented."  ~Carl Everett, Lexington, Kentucky

- "Bad guy, misrepresented [sic] 11 others beside myself, going legal." ~Michael Vallillo, Union, New Jersey

- "I was drawn in by [Marv's] description of the 1963 Thunderbird which he described in his eBay listing as 'shows and runs beautifully ... a real pleasure to drive.'  Included with this comment was a list of 11 major mechanical improvements made by the prior owner at a cost of $20,000.  This was termed 'a complete mechanical restoration.'  ... When the car arrived here, it is a tired, junky-looking piece, smelling like mildew with a very tired interior.  After the driver backed it off the truck, I started to drive it home when, within two miles, the car wouldn't go into reverse.  This together with the fact that NOTHING on the car works. ... I emailed Marv to complain bitterly, and he sent me back a very nasty message

stating if I wanted to get tough they would do nothing for me… ." ~John of Danville, CA

- "BEWARE!!!    VERY bad $30K experience.    Now in litigation." ~bszlaius

- "Grossly misrepresented condition of the vehicle and options.    Won't communicate." ~duncanmotors

- "BEWARE!! Car not as disclosed, spend over $2,000 on repairs to make drivable." ~epatti1232bnn

- "Bad oil leak (Main) covered up.  Title has a Brand (Cloud) that was not disclosed. … Marv is the proverbial USED CAR SALESMAN." ~gravano52

- "Did not disclose defects with car.  Many issues including rust, overspray, leaks." ~67mzstang

- "NIGHTMARE. … I'm still out money, and no vehicle." ~bloblz

- "Very dissatisfied!  What a piece of junk, Marvin.  Unwilling to discuss problems!" ~beaudogie2wa6

- "Item badly misrepresented.  'Gold Seal Inspection' a joke.   Defects galore." ~ejacobgolf

- "L[ia]r … said eng&trans rebuilt, only drove 30 mile, broke, cost me $5400 … have document 2 prove your lies, called over 14 times, emails, b[uy]ers pls contact me." ~so_ca_cars

- "Is not respectable (sic) – car correspondence (sic) not indicated – a liar" ~tepper_de

- "Misrepresent Car, he kept $3,000 deposit, we have contact[ed] FBI & EBAY" ~greenrivertack

- "Told me car was from family member, was from auction, made me wait 6 weeks for title." ~steffesteffe

- "LAWSUIT PENDING! DO NOT buy sight-unseen!  Paid 37,000 for BLK Benz, I got Green. … marv is a THIEF & LIAR- SOLD ME A WRECKED REPAINTED BNEZ- BUYERS BEWARE!" ~1eeweezee

- "IMMENSELY DISAPPOINTED, MARV LIES WITH THE BEST OF THEM, STAY CLEAR, UNETHICAL." ~classic65rsamts

- "Car was damaged when received and had no help with situation.  Seller was no help." ~gattisbird

16.    Thus, the evidence of other consumers, who were deceived and defrauded by defendants in ways similar to the fraud alleged by Plaintiff in this case, are relevant or potentially relevant to the issue of punitive damages, as well as liability.  Such evidence will be subject to the rules of admissibility at trial, and may ultimately be limited in scope, but Plaintiff is clearly entitled to discovery relating to this area of relevant information.

17.    Accordingly, Magistrate Judge Denlow's ruling should be rescinded and Defendants should be ordered to respond to interrogatory no. 24 and document request no. 26, which seek information that is relevant, or may lead to the discovery of admissible evidence.

WHEREFORE, Plaintiff John S. Stafford, III, respectfully requests that this Court enter an order (1) rescinding Magistrate Judge Denlow's May 28, 2008 order; (2)compelling Defendants to respond to interrogatory no. 24 and document request no. 26; and (3) and for any additional relief that the Court deems appropriate.

John S. Stafford, III, an individual

By:____/s Alexander D. Marks_____
One of his Attorneys

Ira M. Levin
Alexander D. Marks
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, Illinois  60611
312-840-7000
312-840-7900 (facsimile)
471001

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that he caused the foregoing Plaintiff's Objection to the Magistrate Judge's Order Denying Motion to Compel Discovery Responses to be filed electronically in the Northern District of Illinois and to be served electronically on:

Bradley B. Falkof
Barnes & Thornburg, LLP
One N. Wacker Dr., Suite 4400
Chicago, IL 60606

on the 6th day of June, 2008 before the hour of 5:00 pm.

/s Alexander D. Marks